**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 20-2306**

───────────────

AZUCENA ARACELY LAZO-GAVIDIA; D.A.L.G.,

      Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

      Respondent.

───────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────────

Argued: October 28, 2022                Decided: July 12, 2023

───────────────

Before WYNN and RUSHING, Circuit Judges, and MOTZ, Senior Circuit Judge.

───────────────

Petition for review granted, order vacated, and remanded by published opinion. Judge Wynn wrote the opinion, in which Senior Judge Motz joined. Judge Rushing wrote a dissenting opinion.

───────────────

**ARGUED:** Herbert Glenn Fogle, Jr., THE FOGLE LAW FIRM, LLC, Atlanta, Georgia, for Petitioners. Brendan Paul Hogan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian Boynton, Acting Assistant Attorney General, Cindy S. Ferrier, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

WYNN, Circuit Judge:

This petition raises important questions about proper notice in removal proceedings. Federal immigration law mandates that the government provide a noncitizen with a written notice to appear that contains certain critical details about her removal hearing, including the "time and place" of the proceedings. In a pair of recent decisions, the Supreme Court has clarified that the notice to appear must be a single document containing all statutorily required information. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021); *Pereira v. Sessions*, 138 S. Ct. 2105 (2018).

Petitioners Azucena Aracely Lazo-Gavidia and her minor son were ordered removed in absentia. The immigration judge denied their motion to reopen the removal proceedings and the Board of Immigration Appeals dismissed their appeal. Because Lazo-Gavidia and her son received defective notices to appear, we grant their petition, vacate the Board's order dismissing their appeal, and remand for further proceedings.

I.

Lazo-Gavidia and her son are natives and citizens of El Salvador.[1] Sometime around May 4, 2019, they entered the United States without authorization and were detained in Texas. During an interview with a federal asylum officer, Lazo-Gavidia reported threats she received from gang members in El Salvador, including that they would rape her and

---

[1] For simplicity, we discuss the facts as they relate to Lazo-Gavidia, but note that the facts apply to her son as well and that both are Petitioners in this case.

kill her son because she refused to cooperate with the gang. The asylum officer found her fears credible and referred her to an immigration judge.

On May 22, 2019, Lazo-Gavidia was served a notice to appear before an immigration judge in Texas. However, that notice did not contain the date and time of the hearing, merely listing "TBD" for both. S.J.A. 90.[2] The notice to appear did state that Lazo-Gavidia was provided oral notice in Spanish "of the consequences of failure to appear" at the hearing and instructed her that if she changed her address or phone number, she must notify immigration officials immediately. S.J.A. 91.

Lazo-Gavidia was released from immigration detention and provided officials with an address in Burlington, North Carolina. On June 4, 2019, she reported to her first check-in with the Department of Homeland Security ("DHS") in Charlotte, North Carolina, and was told her next check-in would be the following year, in June 2020. In July 2019, Lazo-Gavidia moved to a new address in Burlington. However, she did not tell immigration officials about this change of address. Accordingly, DHS sent both a memorandum of change in hearing location and a notice of hearing to her former address. The notice of hearing, which was sent in October 2019, informed Lazo-Gavidia that her removal hearing was scheduled for 8:30 A.M. on January 14, 2020, in Charlotte.

Lazo-Gavidia did not appear at her hearing, and the immigration judge ordered her and her son removed in absentia. In February 2020, upon learning of the removal order,

---

[2] Citations to the "S.J.A." refer to the Sealed Joint Appendix filed by the parties in this case.

Lazo-Gavidia moved to rescind the order and reopen removal proceedings. The immigration judge denied the motion, and Lazo-Gavidia appealed to the Board of Immigration Appeals ("Board"). In her appeal, she argued that she did not receive a proper notice to appear, citing the Supreme Court's *Pereira* decision. The Board affirmed the immigration judge's decision and dismissed the appeal, concluding that Lazo-Gavidia had "not rebutted the slight presumption of delivery and receipt of the hearing notice at the address [she] provided." S.J.A. 98. Lazo-Gavidia timely petitioned this Court for review.

## II.

We review the Board's denial of Lazo-Gavidia's motion to reopen proceedings for abuse of discretion but review any questions of law de novo. *See Diaz de Gomez v. Wilkinson*, 987 F.3d 359, 363 (4th Cir. 2021); *Mosere v. Mukasey*, 552 F.3d 397, 400 (4th Cir. 2009). We will reverse the denial of a motion to reopen only if it is "arbitrary, irrational, or contrary to law." *Mosere*, 552 F.3d at 400 (citation omitted). Although our review of an immigration judge's in absentia removal order is limited by statute, we may properly review "the validity of the notice provided" to the noncitizen. *See Valadez-Lara v. Barr*, 963 F.3d 560, 567 (6th Cir. 2020) (quoting 8 U.S.C. § 1229a(b)(5)(D)).

## III.

## A.

We start with an overview of the governing law. The statutory scheme at issue involves several interrelated provisions governing removal proceedings for noncitizens. Relevant here, an immigration court can order removal in absentia if the noncitizen does not attend her removal hearing and the government proves by "clear, unequivocal, and

convincing evidence" both that the noncitizen is removable and that written notice "required under paragraph (1) or (2) of section 1229(a)" was provided. 8 U.S.C. § 1229a(b)(5)(A). The inverse is also true: the noncitizen can move for rescission of a removal order "at any time" if she "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." *Id.* § 1229a(b)(5)(C)(ii).

Section 1229(a), in turn, provides for two types of notices. Paragraph (1) requires that a "notice to appear" "shall be given" in removal proceedings and enumerates specific notice requirements, including, as relevant here, the "time and place at which the proceedings will be held." *Id.* § 1229(a)(1). Paragraph (2) describes a "[n]otice of change in time or place of proceedings." *Id.* § 1229(a)(2). As the name suggests, this notice provides that "in the case of any change or postponement in the time and place" of a removal hearing, "written notice shall be given" to the noncitizen specifying the "new time or place of the proceedings" and the consequences of failing to attend. *Id.* § 1229(a)(2)(A).

Written notice is considered sufficient for an in absentia removal if it was "provided at the most recent address provided" by the noncitizen. *Id.* § 1229a(b)(5)(A); *see id.* § 1229(a)(1)(F). But if the noncitizen fails to provide or update her address, "[n]o written notice shall be required" for removal. *Id.* § 1229a(b)(5)(B).

## B.

Questions about proper notice in removal proceedings "have generated significant controversy in recent years." *Singh v. Garland*, 24 F.4th 1315, 1318 (9th Cir. 2022). The government, however, would have us avoid tackling these important issues, arguing that

Lazo-Gavidia did not adequately raise these arguments in the immigration proceedings below and therefore failed to exhaust her administrative remedies.

We disagree. While it is true that we may review a final order of removal "only if the [noncitizen] has exhausted all administrative remedies available," and that this precludes us from considering "bases for relief that were not raised below," *Ramirez v. Sessions*, 887 F.3d 693, 700 (4th Cir. 2018) (citations and internal quotation marks omitted), we conclude that Lazo-Gavidia sufficiently raised her argument about improper notice to the Board. In her appeal, she summarized *Pereira* and emphasized its main holding, arguing that a notice to appear "which failed to include the date, time or place of the hearing, was an imperfect [notice to appear] and therefore <u>void</u>." S.J.A. 17. We do not penalize petitioners "by evaluating form over substance" so long as their arguments before the Board "in essence raised the claim at issue" so as to put the Board on notice of the claim. *Perez Vasquez v. Garland*, 4 F.4th 213, 228 (4th Cir. 2021) (citations and internal quotation marks omitted). Lazo-Gavidia met that standard here.

The government also contends that two of this Court's prior decisions foreclose Lazo-Gavidia's arguments about proper notice. *See Cedillos-Cedillos v. Barr*, 962 F.3d 817 (4th Cir. 2020); *United States v. Cortez*, 930 F.3d 350 (4th Cir. 2019). Again, we disagree. In both of those cases, we rejected the petitioner's argument that because the notice to appear in his case omitted the date and time of his removal hearing, the immigration court lacked *jurisdiction* to hear his case pursuant to 8 C.F.R. § 1003.14(a). *See Cedillos-Cedillos*, 962 F.3d at 823–24; *Cortez*, 930 F.3d at 362–66. That regulation concerns a notice to appear. *See* 8 C.F.R. § 1003.13.

But "unlike its statutory counterpart in 8 U.S.C. § 1229(a)(1)"—the statute at issue here—the regulation in question in *Cedillos-Cedillos* and *Cortez* "does not require a date and time for a subsequent removal hearing." *Cortez*, 930 F.3d at 359. We emphasized that it was "the regulatory definition of 'notice to appear,' and *not § 1229(a)'s definition*, that control[led]." *Cedillos-Cedillos*, 962 F.3d at 823–24 (emphasis added) (quoting *Cortez*, 930 F.3d at 363). Further, "the regulations in question and § 1229(a) speak to different issues—filings in the immigration court to initiate proceedings, on the one hand, and notice to noncitizens of removal hearings, on the other." *Cortez*, 930 F.3d at 366.

In other words, *Cedillos-Cedillos* and *Cortez* dealt with a jurisdictional challenge arising under an entirely different source of law with an entirely different definition of a notice to appear. Thus, they have no bearing on this case.

## C.

That brings us to the heart of the matter. The central issue is whether Petitioners are entitled to rescission of their in absentia removal orders when their initial notices to appear failed to contain the date and time of their hearing. A noncitizen can be removed in absentia only if "written notice required under paragraph (1) or (2) of section 1229(a)" was "provided." 8 U.S.C. § 1229a(b)(5)(A). Because Petitioners did not receive proper written notice under either paragraph, we hold that they are entitled to rescission of their removal orders.

### 1.

Paragraph (1) of § 1229(a) requires a "notice to appear" to include seven specified items, including the "time and place at which the proceedings will be held." 8 U.S.C.

§ 1229(a)(1)(G). Lazo-Gavidia's May 2019 notice to appear did not contain the date and time of her hearing. So, by the express terms of the statute, she was not provided "written notice required under paragraph (1)" of § 1229(a). *Id.* § 1229a(b)(5)(A).

The Supreme Court is likewise clear that a valid notice to appear under § 1229(a)(1) must contain all the enumerated requirements, including the time and place of the hearing. Indeed, a notice to appear "that does not inform a noncitizen when and where to appear for removal proceedings is *not* a 'notice to appear under section 1229(a).'" *Pereira*, 138 S. Ct. at 2110 (emphasis added). After all, "Congress took pains to describe exactly what the government had to include in a notice to appear, and that the time and place of the hearing were among them." *Niz-Chavez*, 141 S. Ct. at 1479. Nor could the government convey the statutorily prescribed information "piecemeal" across multiple notices. *Id*. Rather, § 1229(a) requires a "single statutorily compliant document." *Id.* at 1481.

To be sure, *Pereira* and *Niz-Chavez* interpreted § 1229(a) in the context of the so-called "stop-time" rule rather than in the context of in absentia removal. Noncitizens who are subject to removal proceedings but have been physically present in the United States for at least ten years may be eligible for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1). However, under the stop-time rule, the period of continuous residence "shall be deemed to end . . . when the alien is served a notice to appear under section 1229(a)." *Id.* § 1229b(d)(1). In other words, a valid notice to appear stops the clock of continuous residence that would make a noncitizen potentially eligible for cancellation of removal.

The stop-time rule is not at issue here, which the government contends means that *Pereira* and *Niz-Chavez* are irrelevant. But we agree with the other circuits to have

considered this issue that the Supreme Court's analysis of § 1229(a)(1) also applies to the in absentia removal context. *See Laparra-Deleon v. Garland*, 52 F.4th 514, 519–21 (1st Cir. 2022); *Rodriguez v. Garland*, 15 F.4th 351, 354–55 (5th Cir. 2021); *Singh*, 24 F.4th at 1320; *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1318 (11th Cir. 2022) (agreeing with noncitizen "that, under *Niz-Chavez v. Garland*, his first notice was incomplete" because "it omitted an initial hearing time," but denying relief on other grounds).

Like the stop-time provision, the in absentia removal provision "expressly referenc[es] § 1229(a)." *Pereira*, 138 S. Ct. at 2114. And in *Niz-Chavez*, the Supreme Court interpreted § 1229(a) "separately from the stop-time statute." *Rodriguez*, 15 F.4th at 355. In doing so, the Court emphasized that "written notice" was defined in § 1229(a)(1) as "*a* 'notice to appear.'" *Niz-Chavez*, 141 S. Ct. at 1480 (emphasis added) (quoting § 1229(a)(1)). Thus, "'a' notice would seem to suggest just that: 'a' single document containing the required information, not a mishmash of pieces with some assembly required." *Id.* The larger statutory context, with frequent uses of a singular article "a" or "the" before "notice," confirmed for the Court that providing "notice" was a "discrete moment, not an ongoing endeavor." *Id.* at 1483.

There is no dispute—including from our friend in dissent, Dissenting Op. at 24–25—that Lazo-Gavidia did not receive a "single statutorily compliant" § 1229(a)(1) notice to appear that contained all the enumerated requirements. *Niz-Chavez*, 141 S. Ct. at 1481. So she was not provided "written notice required under paragraph (1)" of § 1229(a) and was therefore free under the express language of the statute to seek rescission of her

removal order. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii) (in absentia removal order can be rescinded "upon a motion to reopen filed at any time" if the noncitizen demonstrates that she "did not receive notice in accordance with paragraph (1) *or* (2) of section 1229(a)" (emphasis added)).

2.

Not only is Lazo-Gavidia permitted to *seek* rescission—she is also *entitled* to rescission. That's because the immigration court did not have the authority to order her removed in absentia in the first place because the government did not provide her with proper notice under *either* § 1229(a)(1) or § 1229(a)(2). *See id.* § 1229a(b)(5)(A).

We've addressed Paragraph (1). Nevertheless, the government and dissent contend that Lazo-Gavidia received proper notice under Paragraph (2) via the October 2019 notice of hearing. This document provided, for the first time, a date and time for her removal hearing. And so, the government argues, Lazo-Gavidia received a written hearing notice under § 1229(a)(2), which "justifies . . . the entry of the *in absentia* order." Government's Br. at 36.

The dissent makes a similar argument in its lengthy discussion of the disjunctive "or," in which it concludes that we have "stumble[d]" over the statutory text. Dissenting Op. at 20. In essence, the dissent's main textual point is that the use of the negation of the "or" in the rescission provision—i.e., that an in absentia removal order may be rescinded if the noncitizen demonstrates that she "did not receive notice in accordance with paragraph (1) or (2)" of § 1229(a)—requires the noncitizen to show that she did not receive both a valid Paragraph (1) and a valid Paragraph (2) notice. § 1229a(b)(5)(C)(ii); *see* Dissenting

10

Op. at 20–21. But even assuming this is correct,[3] it does not change the analysis in this case, because of the text of Paragraph (2) itself.

Paragraph (2) requires "written notice" of the "*new* time or place of the [removal] proceedings" to "be given" "in the case of any *change or postponement* in the time and place of such proceedings." 8 U.S.C. § 1229(a)(2)(A) (emphases added). But Lazo-Gavidia's October 2019 notice of hearing did not constitute "written notice" of a "change or postponement" of her removal proceedings: because no "time" had ever been set, there was nothing to change or postpone.[4] Any argument to the contrary is expressly foreclosed by *Pereira*, which reasoned:

---

[3] We are skeptical that the disjunctive "or" can carry the weight the dissent would give it. Certainly, where the government provides a *valid* Paragraph (1) notice and orders the noncitizen removed at the hearing described in that notice, the government has done all it needs to do: it does not need to also provide a Paragraph (2) notice because there was never a change of hearing. But if the government does send a Paragraph (2) notice, then we must look to the validity of that notice. And that validity is determined by the text of Paragraph (2)—which, at least in the case at bar, points back to the validity of the Paragraph (1) notice, for reasons explained below.

[4] The dissent proffers a three-notice hypothetical in which a noncitizen receives an invalid Paragraph (1) notice that omits the hearing time, then some unspecified "notice" providing a time, then a Paragraph (2) notice with a new time. Dissenting Op. at 28 n.1. Of course, that is not what occurred in this case: Lazo-Gavidia first received notice of the time and date of her hearing in a purported Paragraph (2) notice of hearing in October 2019. It is also wholly unclear where in the statutory scheme this intermediate "notice" comes from or what it entails. The dissent says it is not a compliant Paragraph (1) notice. *Id.* If it is a Paragraph (2) notice, then it is invalid for the reasons given: because no time was set in the original Paragraph (1) notice, there was no time to change or postpone in this intermediate "notice." And if it is some unknown notice, we note it complies with neither Paragraphs (1) or (2) and the statutory safeguards those provisions contain, and flies in the face of *Niz-Chavez*'s admonishment against conveying the statutorily prescribed information "piecemeal" across multiple notices. 141 S. Ct. at 1479.

By allowing for a "change or postponement" of the proceedings to a "new time . . . ," paragraph (2) presumes that the Government has already served a "notice to appear under section 1229(a)" that specified a time . . . as required by § 1229(a)(1)(G)(i). *Otherwise, there would be no time . . . to "change or postpone."*

*Pereira*, 138 S. Ct. at 2114 (alterations omitted, emphasis added). *Pereira* thus "necessarily reads 'change' in § 1229(a)(2) to refer to 'the substitution of one thing for another' or 'the succession of one thing in place of another,' rather than to refer to the initial establishment of something that did not previously exist." *Laparra-Deleon*, 52 F.4th at 520 (quoting 3 Oxford English Dictionary, 15 (2d ed. 1989)) (citations omitted). In other words, Lazo-Gavidia's October 2019 notice of hearing did not "change or postpone[]" the time of her removal hearing because no time and date had ever been set. She therefore did not receive "written notice required under paragraph . . . (2)" of § 1229(a). 8 U.S.C. § 1229a(b)(5)(A).

We recognize that, in addressing a similar argument, the Eleventh Circuit concluded that the type of notice required is "tied to" the hearing at which the noncitizen is removed. *Dacostagomez*, 40 F.4th at 1317. *But see Mendoza-Ortiz v. U.S. Att'y Gen.*, No. 21-12438, 2023 WL 2519598, at *5 (11th Cir. Mar. 15, 2023) (per curiam) (granting petition to reopen removal proceedings when notice to appear did not contain the date and time of the first removal hearing because petitioner "never received a single document that contained all the information required"). The Eleventh Circuit held that "[f]or the original hearing, the government must provide a paragraph (1) notice to appear. But for any rescheduled hearing or additional hearing to follow, paragraph (2) notice becomes necessary. And for purposes of in absentia removal, the notice that matters is the notice for the hearing missed." *Dacostagomez*, 40 F.4th at 1317. That is, according to our sister circuit, "in absentia

removal is lawful so long as the government provided notice *for whichever hearing was missed*, which means reopening is available [only] if the notice *for that hearing* was not provided." *Id.* at 1316 (emphases added). The dissent echoes this argument. *See* Dissenting Op. at 22–24.

For reasons given, we have found that the government did *not* provide notice under either Paragraph (1) or (2). This argument is also foreclosed by the statutory text and precedent. Section 1229(a)(1) requires that the initial notice to appear contain seven specific types of information, including the "time and place" of the hearing, but also the "nature of the proceedings," the charges against the noncitizen, and that the noncitizen may be represented by counsel. 8 U.S.C. § 1229(a)(1). In stark contrast, Paragraph (2), which applies to a "[n]otice of change in time or place of proceedings," only requires two types of information: the "*new* time or place" of the hearing and the consequences of failing to attend. *Id.* § 1229(a)(2) (emphasis added). It is clear that Paragraph (2) notices "are additions to, and not alternatives to," the original notice to appear. *Singh*, 24 F.4th at 1320. *Niz-Chavez*—which the Eleventh Circuit barely mentioned—said as much when it noted that "*once the government serves a compliant notice to appear*," it is then permitted "to send a supplemental notice amending the time and place of an alien's hearing if logistics require a change." *Niz-Chavez*, 141 S. Ct. at 1485 (emphasis added). A "compliant notice to appear" is not an optional part of the statutory structure.

Indeed, taken to its logical conclusion, the Eleventh Circuit's position would effectively eviscerate the protections provided by a valid notice to appear. Say Lazo-Gavidia's initial notice, in addition to not containing the date and time of her hearing, also

failed to include notice of the charges against her and that she could be represented by counsel. No matter. The government just needs to send a change-in-time-and-place notice under § 1229(a)(2) and order her removed at *that* hearing. That's seemingly fine under *Dacostagomez*, because the invalid original notice to appear "was not the [notice] for the hearing [she] missed." *Dacostagomez*, 40 F.4th at 1318. Yet, under that circumstance, she would *never* receive notice of the charges against her or notice that she could be represented by counsel, because those are only required elements of a Paragraph (1) notice, not a Paragraph (2) notice.

The dissent makes the same mistake. In situations in which the government changes the time or place of a noncitizen's removal proceeding (a seemingly common occurrence), in the dissent's view, the statute "requires only two items to be included" in the hearing notice: the new time and place of the proceedings and the consequences of failing to attend. *See* Dissenting Op. at 27 (citing § 1229(a)(2)(A)). In other words, immigration officials can provide a noncitizen with a Paragraph (1) notice that omits any (or all) of the requirements that Congress specifically enumerated in that paragraph, so long as the time or place of the removal proceeding is later changed. But this alternative reading would render Paragraph (1) a nullity. We do not believe it likely that Congress intended immigration officials to be able to so easily skirt the statutory protections that it carefully provided noncitizens in Paragraph (1). As the dissent reminds us, our duty is to "construe statutes, not isolated provisions," Dissenting Op. at 21 (citation omitted), and in doing so we must adhere to the "cardinal principle of statutory construction" that the statute should be construed to not render a provision "superfluous, void, or insignificant," *TRW Inc. v.*

*Andrews*, 534 U.S. 19, 31 (2001) (citation omitted). Yet that is what the dissent's reading would entail for Paragraph (1) in the mine run of cases in which the government changes the time or place of the removal proceeding.

In sum, Lazo-Gavidia did not receive "written notice required under paragraph (1)" of § 1229(a) because her original notice to appear from May 2019 did not contain the date and time at which her removal hearing was to be held. 8 U.S.C. § 1229a(b)(5)(A). She likewise did not receive "written notice required under paragraph . . . (2)" of § 1229(a), *id.*, because her October 2019 notice of hearing did not "change or postpone[]" the time of her removal hearing since no "time" had ever been set, *id.* § 1229(a)(2)(A). Accordingly, because neither type of required written notice was provided, she could not have been removed in absentia and is entitled to rescission of her removal.

3.

The government and dissent also argue that, regardless of any flaws in her May 2019 notice to appear, Lazo-Gavidia was not entitled to notice *at all* because she failed to update her address with the immigration court when she moved from her old address to her new address in Burlington in July 2019.

The removal provisions provide that "[n]o written notice shall be required . . . if the alien has failed to provide the address required." 8 U.S.C. § 1229a(b)(5)(B); *see id.* § 1229(a)(1)(F) (requiring the noncitizen to provide a "written record of any change of . . . address"). For the government and dissent, Lazo-Gavidia's failure to provide her new address is dispositive. At least two other circuits agree. *See Dacostagomez*, 40 F.4th at 1319; *Gudiel-Villatoro v. Garland*, 40 F.4th 247, 249 (5th Cir. 2022) (concluding that

15

the "rule" established by the Fifth Circuit in *Rodriguez*—that a noncitizen may move to rescind an in absentia removal order if the notice to appear does not include all required information—"does not apply when the alien fails to provide an address").

We cannot follow our sister circuits down this path. Again we are guided by *Niz-Chavez*, which holds that a valid notice to appear under § 1229(a)(1) must be a "single statutorily compliant document." *Niz-Chavez*, 141 S. Ct. at 1481. Lazo-Gavidia did not receive that notice, despite the fact that she provided the government with a valid address for her initial residence. In other words, Lazo-Gavidia was compliant with her statutory obligations, *see* § 1229(a)(1)(F)(i) (noncitizen must "immediately provide" written address), while the government did not uphold its end by failing to provide a time and date for her original removal hearing. That deficient notice to appear cannot be remedied by the later notice of hearing that, too, is deficient—and is deficient regardless of whether Lazo-Gavidia has provided her updated address.

To be sure, a noncitizen's failure to update her address may have consequences for her ability to argue that she did not receive a notice of change in time or place of proceedings under § 1229(a)(2). *See Maghradze v. Gonzales*, 462 F.3d 150, 154 (2d Cir. 2006) (holding that noncitizens who "fail to provide a written update of a change of address are deemed to have constructively received notice"). For example, assuming the noncitizen received a *valid* notice to appear under § 1229(a)(1) and then failed to update her address, she would likely be unable to move to rescind a removal order on the grounds that she "did not receive notice in accordance with *paragraph . . . (2)*" of § 1229(a). 8 U.S.C. § 1229a(b)(5)(C)(ii) (emphasis added). The same result would presumably also hold if the

government attempted to send the noncitizen a proper Paragraph (1) notice but could not because the noncitizen did not provide an updated address. *See Tesfagaber v. Holder*, 323 F. App'x 222, 224 (4th Cir. 2009) (per curiam) (holding that because noncitizen did not provide updated address, "he cannot now seek rescission of the removal order based on not receiving notice"). But that was not the situation here—Lazo-Gavidia never received, nor did the government ever attempt to send her, a compliant notice to appear—and so these hypotheticals say nothing about Lazo-Gavidia's ability to contest both *invalid* notices the government provided her in this case.

*        *        *

The statutory scheme contemplates a notice to appear that fully complies with the requirements of § 1229(a)(1). The Supreme Court has emphasized that this notice must be a "single statutorily compliant document." *Niz-Chavez*, 141 S. Ct. at 1481. That is because the original notice to appear, by itself and regardless of any future need for a change in hearing, is a critical document—"the basis for commencing a grave legal proceeding" with profound implications for people like Lazo-Gavidia and her son. *Id.* at 1482. If the government holds the original removal hearing as envisioned by the satisfactory notice to appear, there is no need for further notices. Of course, "if logistics require a change," *id.* at 1485, the government has statutory flexibility to send a change of hearing notice. But that flexibility does not excuse the government from its obligations to provide a valid notice to appear in the first instance. That did not happen here. Nor did Lazo-Gavidia receive proper notice under § 1229(a)(2). There having been no time specified in her original notice to

17

appear, there was no time to "change or postpone[]" in a subsequent notice of hearing. *See* § 1229(a)(2)(A); *Pereira*, 138 S. Ct. at 2114.

Because she did not receive the "written notice required under paragraph (1) or (2) of section 1229(a)," *see* § 1229a(b)(5)(A), Lazo-Gavidia is entitled to the reopening of her proceedings and the rescission of her removal order.[5]

### IV.

For the foregoing reasons, we grant the petition and vacate the dismissal by the Board of Immigration Appeals. We remand for further proceedings consistent with this opinion.[6]

*VACATED AND REMANDED*

---

[5] In its removal order, the Board separately noted that an asylum seeker "who is subject to an in absentia removal order need not first rescind the order before seeking reopening of the proceedings to apply for asylum." S.J.A. 4. However, the Board concluded that Lazo-Gavidia did not provide proper evidence to support reopening for asylum. *Id.* Because we find that the Board erred in not granting Lazo-Gavidia's motion to reopen her removal proceedings for the reasons discussed, we need not reach this issue.

[6] We note the limited nature of our holding: Lazo-Gavidia is entitled to rescission of her removal order and an opportunity to be heard at a removal hearing. We provide no other substantive relief at this juncture. Courts should favor providing access to legal proceedings. And, we observe that this issue is unlikely to reoccur. The law is clear on what the initial notice to appear must provide and we anticipate the government will comply going forward.

RUSHING, Circuit Judge, dissenting:

Lazo-Gavidia and her son (Petitioners) did not attend their removal hearing on January 14, 2020.  So the immigration judge ordered them removed in their absence. Petitioners then sought to rescind the removal order, arguing that they did not receive notice of the hearing.  As relevant here, an immigration judge may rescind an in absentia removal order "if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)."  8 U.S.C. § 1229a(b)(5)(C)(ii).  The Charlotte Immigration Court sent Petitioners notice of their January 14 hearing in accordance with paragraph (2), so the immigration judge and Board of Immigration Appeals correctly denied relief.  Contrary to Petitioners' argument, and the majority's holding, Petitioners did not carry their burden to prove a lack of notice merely by showing that earlier notices they received failed to comply with paragraph (1).  Moreover, Petitioners' failure to update their address relieved the Department of Homeland Security (DHS) of its obligation to prove that notice had been provided.  As a result, I would deny the petition.

## A.

"As always" in matters of statutory interpretation, "we begin with the text." *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022).  To discern the meaning of a law enacted by Congress, we "exhaust all the textual and structural clues bearing on that meaning," *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021) (internal quotation marks omitted), being careful to consider the words in their context, *Sw. Airlines*, 142 S. Ct. at 1788.

Section 1229a(b)(5)(C)(ii) authorizes rescission of an in absentia removal order "if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title." The word "or" is "almost always disjunctive." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (internal quotation marks omitted). And so it is here. An alien who received notice of her removal hearing in accordance with paragraph (1) *or* in accordance with paragraph (2) is not eligible for rescission.

The majority stumbles over this interpretive principle, reasoning that "or" means an alien need only show that she did not receive *one* of the two types of notice to move to reopen. *See supra*, at 9–10. But when a disjunctive word like "or" is combined with a negation like "did not," both listed conditions must be met. *See Schane v. Int'l Bhd. of Teamsters Union Loc. No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 589 (7th Cir. 2014). In other words, the negation of a disjunction of two statements (not A or B) is logically equivalent to the conjunction of each statement's negation (not A and not B). *See Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 680 (Fed. Cir. 2015) ("[In] proper grammar, . . . the phrase 'not A, B, *or* C' means 'not A, not B, *and* not C.'" (internal quotation marks omitted)). For example, "*Don't drink and drive*" means "[y]ou can do either one, but you can't do them both." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 119 (2012). By contrast, "with *Don't drink or drive*, you cannot do either one: Each possibility is negated." *Id.* The same is true with a disjunctive negative proof. If a statute requires proof that you have not done A, B, or C, it typically is insufficient to prove that you have not done A; you "must have done none." *Id.* at 120.

20

This interpretive rule applies squarely to Section 1229a(b)(5)(C)(ii).  By requiring an alien to show that she "did *not* receive notice in accordance with paragraph (1) *or* (2)," Congress required her to show that she did *not* receive notice under paragraph (1) *and* did *not* receive notice under paragraph (2).  8 U.S.C. § 1229a(b)(5)(C)(ii) (emphasis added).  Put differently, if the alien received notice of her removal hearing under either paragraph yet did not attend, her in absentia removal cannot be rescinded.

This understanding of the recission provision accords with the in absentia removal provision that appears earlier in the same statute.  *See Turkiye Halk Bankasi A.S. v. United States*, 143 S. Ct. 940, 948 (2023) ("Court[s] ha[ve] a duty to construe statutes, not isolated provisions." (internal quotation marks omitted)).  The removal provision specifies what notice is necessary before in absentia removal can be ordered in the first place, while the rescission provision authorizes reopening if the alien shows she did not receive the required notice.

The in absentia removal provision states that "[a]ny alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if [DHS] establishes . . . that the written notice was so provided and that the alien is removable."  8 U.S.C. § 1229a(b)(5)(A).  Here, Congress uses the disjunctive—"notice required under paragraph (1) or (2)"—without the negation. The ordinary disjunctive meaning of "or," as here, "'usually . . . separates words or phrases in the alternate relationship, indicating that either of the separated words or phrases may be employed without the other.'"  *Rush v. Kijakazi*, 65 F.4th 114, 119 (4th Cir. 2023)

21

(quoting 1A Norman Singer & Shambie Singer, *Sutherland Statutes and Statutory Construction* § 21:14 (7th ed. 2022)). Therefore, an alien may be removed in absentia if she is provided either a paragraph (1) notice or a paragraph (2) notice and fails to attend her hearing. Both notices are not required; either one will suffice. *See* Scalia & Garner, *supra*, at 116 ("[W]ith the disjunctive list, at least one of the three [A, B, or C] is required, but any one (or more) of the three satisfies the requirement."). This plain reading is bolstered by the removal provision's requirement that DHS show the alien was provided "*the* written notice." 8 U.S.C. § 1229a(b)(5)(A) (emphasis added). By referring to "written notice" in the singular with the definite article "the," Congress reinforced that only one written notice is required for in absentia removal—a paragraph (1) notice or a paragraph (2) notice. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (interpreting the definite article as singular); *see also Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) ("'[T]he' . . . indicat[es] that a following noun . . . is definite or has been previously specified by context." (internal quotation marks omitted)).

Although one notice is sufficient, not just any notice will do. The notice received must be for the proceeding the alien missed, the same proceeding at which she is ordered removed in absentia. After all, an immigration judge can order a person removed in absentia only if the person "does not attend a proceeding" after she is provided with the required notice. 8 U.S.C. § 1229a(b)(5)(A).

The cross-referenced notice provisions help us understand. Recall that paragraph (1) of Section 1229(a) requires the Government to give a person in removal proceedings a "notice to appear" specifying, among other things, the charges against her, "[t]he time and

place at which the proceedings will be held," and the consequences of failing to appear "at such proceedings." *Id.* § 1229(a)(1). If there is "any change or postponement in the time and place" of the removal proceedings, then paragraph (2) requires the Government to give the person a written notice specifying "the new time or place of the proceedings" and the consequences of failure to attend "such proceedings." *Id.* § 1229(a)(2)(A). Paragraphs (1) and (2) bolster the natural reading of the removal provision's notice requirement: that the Government must have provided notice of the specific "proceeding" the person missed before she can be removed in absentia.

A contrary reading—one that would allow a person to be removed in absentia after receiving notice of a hearing *different* than the one she missed—would be nonsensical and raise potential due process concerns. *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1317–1318 (11th Cir. 2022), *pet. for cert. dismissed*, 143 S. Ct. 1102 (2023). Because one form of notice is sufficient for in absentia removal, *see* 8 U.S.C. § 1229a(b)(5)(A), it must be notice of the hearing missed.

Likewise, the order of removal can be rescinded upon a finding that the notice specific to that hearing was improper or not received. *Id.* § 1229a(b)(5)(C)(ii). Suppose, for example, that the Government sent an alien a valid paragraph (1) notice but later rescheduled the proceedings without sending a paragraph (2) notice. If at the latter hearing the immigration judge ordered the alien removed in absentia, she would be entitled to rescind that order because she did not receive proper paragraph (2) notice, despite receiving paragraph (1) notice of *a different hearing*. In other words, she "did not receive notice in accordance with paragraph (1) or (2)" for the hearing at which she was ordered removed.

*Id.*  The opposite is also true: an alien would not be entitled to rescission of a removal order imposed at "a perfectly noticed hearing" simply because she "did not receive notice of an earlier hearing at which [s]he was not ordered removed."  *Dacostagomez-Aguilar*, 40 F.4th at 1318.

In one circumstance, Congress released the Government from any obligation to provide written notice.  "No written notice shall be required" before removing an alien in absentia "if the alien has failed to provide" the Government with her address or a change of address.  8 U.S.C. § 1229a(b)(5)(B); *see id.* § 1229(a)(1)(F).  Paragraph (2) similarly states that "a written notice shall not be required under this paragraph if the alien has failed to provide the address required . . . ."  *Id.* § 1229(a)(2)(B).  So one form of notice of the hearing missed is required in all cases unless the alien has failed to update her address, in which case no notice is necessary.

## B.

Applying the statute to Petitioners' case is straightforward.  On May 17, 2019, immigration officers personally served Petitioners with paragraph (1) notices specifying, among other things, the charges against them, their right to counsel, and their obligation to provide a mailing address and update DHS and the immigration court if their address changed in the future.  The notices ordered Petitioners to appear for their removal hearings at the immigration court in Pearsall, Texas on a time and date "TBD"—to be determined.  A.R. 90, 102.  By statute, however, a paragraph (1) notice must include "[t]he time . . . at which the proceedings will be held."  8 U.S.C. § 1229(a)(1)(G)(i); *see Pereira v. Sessions*, 138 S. Ct. 2105, 2113–2114 (2018).  Petitioners' paragraph (1) notices, therefore, were

24

incomplete because they omitted the time and date of the hearing. Moreover, the hearing that Petitioners missed did not occur in Pearsall, Texas, so the paragraph (1) notices did not provide written notice of the relevant proceeding. Thus, Petitioners did not receive "notice in accordance with paragraph (1)." 8 U.S.C. § 1229a(b)(5)(C)(ii).

But the Government did send Petitioners notice in accordance with paragraph (2). On October 28, 2019, the Charlotte Immigration Court mailed to Petitioners' last known address a document titled "Notice of Hearing in Removal Proceedings." A.R. 89. That document specified that Petitioners' hearing would be on January 14, 2020, at 8:30 a.m., at the immigration court in Charlotte, North Carolina. It warned that failure to appear at the hearing would result in an order of removal. The notice also advised Petitioners again of their right to counsel and the obligation to update their mailing address. That notice was in accordance with paragraph (2) because it contained "the new time or place of the proceedings" and "the consequences" of "failing . . . to attend." 8 U.S.C. § 1229(a)(2)(A); *see also* 8 C.F.R. § 1003.18.

Petitioners claim they did not actually receive the paragraph (2) notice because they moved to a new home and did not notify the Government about their change of address as required. Under the statute, however, written notice "shall be considered sufficient . . . if provided at the most recent address provided" by the alien. 8 U.S.C. § 1229a(b)(5)(A); *see also id.* § 1229(c) ("Service by mail . . . shall be sufficient if there is proof of attempted delivery to the last address provided by the alien . . . ."). Moreover, under paragraph (2), "a written notice shall not be required" if the alien is not in detention and has failed to inform the Government of a change in her address. *Id.* § 1229(a)(2)(B). The removal

statute confirms that, because Petitioners did not give the Government their new address, "[n]o written notice [was] required" before they were removed in absentia. *Id.* § 1229a(b)(5)(B). Petitioners' failure to update their address "not only prevented the [G]overnment from giving [them] notice . . . but also, under paragraph (2), released it from any obligation to do so." *Dacostagomez-Aguilar*, 40 F.4th at 1319; *see also Gudiel-Villatoro v. Garland*, 40 F.4th 247, 249 (5th Cir. 2022) ("Petitioner did not provide any address, so he may not reopen his removal proceedings on the ground that the date and time of his removal proceeding were not included in his notice to appear.").

In short, because the Government sent notice of the January 14 hearing to Petitioners at their last known address and Petitioners did not attend that hearing, the immigration judge properly ordered them removed in absentia. Petitioners are not entitled to rescission of their removal orders because their notice was "in accordance with paragraph . . . (2)," 8 U.S.C. § 1229a(b)(5)(C)(ii), and because no written notice was required, *id.* § 1229a(b)(5)(B).

## C.

The majority disagrees. In their view, a paragraph (2) notice is never adequate to remove an alien in absentia if the alien did not first receive a complete paragraph (1) notice. *See supra*, at 10–15. Put differently, an incomplete paragraph (1) notice forecloses the possibility of a valid paragraph (2) notice. The majority's reasoning is unpersuasive.

According to the majority, one requirement for a valid paragraph (2) notice is that it "change or postpone" the hearing time or place stated in the paragraph (1) notice. *Supra*, at 11; *see also Laparra-Deleon v. Garland*, 52 F.4th 514, 519–520 (1st Cir. 2022). And if

26

the paragraph (1) notice did not include a specific hearing time, the argument goes, there
is nothing to change or postpone.

But the majority conflates *when* the Government must issue a paragraph (2) notice
with *what* that notice must contain.  The cross-reference to paragraph (2) specifying the
"written notice required" before an alien may be removed in absentia concerns the latter.
8 U.S.C. § 1229a(b)(5)(A).  When the Government changes the time or place of the
removal proceedings, paragraph (2) requires only two items to be included in that notice:
"(i) the new time or place of the proceedings, and (ii) the consequences . . . of failing . . .
to attend such proceedings."  *Id.* § 1229(a)(2)(A).  A written notice containing these two
items is the "notice required under paragraph . . . (2)" for purposes of in absentia removal.
*Id.* § 1229a(b)(5)(A); *cf. Pereira*, 138 S. Ct. at 2116 (explaining that paragraph (1) defines
"a notice to appear" as written notice specifying the information listed in that paragraph).
The mention of "change or postponement" does not define what constitutes adequate notice
under paragraph (2) but instead appears in the sentence explaining when the Government
must send such a notice: "in the case of any change or postponement in the time and place
of such proceedings . . . a written notice shall be given."  8 U.S.C. § 1229(a)(2).  The
Government's obligation to send a paragraph (2) notice in specific circumstances does not
alter the required contents of that notice.

And the Government complied with its paragraph (2) obligation here.  When the
"place of the proceedings" "change[d]" from Pearsall to Charlotte, the immigration court
sent a notice specifying the "new time [and] place" as well as "the consequences" of failure
to appear.  *Id.* § 1229(a)(2).  The fact that the Government had not previously set a time

27

for Petitioners' removal hearing in Pearsall did not render its paragraph (2) notice inadequate or not "in accordance with" paragraph (2). *Id.* § 1229a(b)(5)(C)(ii).[1]

*Pereira* and *Niz-Chavez* do not require the majority's misreading of the in absentia removal and rescission provisions. In those cases, the Supreme Court interpreted the stop-time rule, for which time stops accumulating upon service of "a notice to appear under section 1229(a)." *Id.* § 1229b(d)(1). The Supreme Court explained that, to trigger the stop-time rule, a notice to appear must include the time and place of the removal proceeding, *Pereira*, 138 S. Ct. at 2114, and must provide all the statutorily required information in a single document, *Niz-Chavez*, 141 S. Ct. at 1480.

A "notice to appear" is the written notice required under paragraph (1), and only that notice can trigger the stop-time rule. *See* 8 U.S.C. § 1229(a)(1); *Pereira*, 138 S. Ct. at 2114. By contrast, the provision of "written notice required under paragraph (1) or (2) of section 1229(a)" can support in absentia removal. 8 U.S.C. § 1229a(b)(5)(A). Thus, while *Pereira* and *Niz-Chavez* define what is necessary for a valid paragraph (1) notice, the "written notice" of the in absentia removal provision includes not just paragraph (1) notices but paragraph (2) notices as well. *But see Singh v. Garland*, 24 F.4th 1315, 1320 (9th Cir.

---

[1] Consider also, for example, a case in which the alien receives three notices: (i) a paragraph (1) notice that lacks the time of the hearing, (ii) a notice supplying the missing hearing time, and (iii) a paragraph (2) notice with a new time. Although the alien never received a complete paragraph (1) notice all in one document as required by *Niz-Chavez*, the paragraph (2) notice indisputably "change[d]" the time of the hearing from one day to another. 8 U.S.C. § 1229(a)(2). But it appears the majority would find even this paragraph (2) notice insufficient because it was not preceded by a complete paragraph (1) notice. *See supra*, at 13.

28

2022) (incorrectly interpreting "written notice" in Section 1229(a) to refer exclusively to "a Notice to Appear"), *cert. granted*, 2023 WL 4278445 (U.S. June 30, 2023) (No. 22-884). Even if, as the majority says, a notice to appear "is not an optional part of the statutory structure," *supra*, at 13, it is nevertheless only one of two alternative ways Congress authorized to provide a person notice of her obligation to attend an upcoming removal hearing. And "[i]t would be nonsensical to invalidate an in absentia removal order because two kinds of notice were not received when only one was required in the first place." *Dacostagomez-Aguilar*, 40 F.4th at 1317.

The majority relies on a reference to paragraph (2) in *Pereira*. There, the Supreme Court reasoned that paragraph (2) "bolster[ed]" its interpretation of paragraph (1) because, "[b]y allowing for a 'change or postponement,'" paragraph (2) "presumes that the Government has already served" a paragraph (1) notice that specified a time and place. 138 S. Ct. at 2114. But the Supreme Court said nothing to suggest that a paragraph (2) notice is valid only if preceded by a complete paragraph (1) notice. Indeed, the Court said nothing at all about what makes a valid paragraph (2) notice. And, as already explained, Congress permitted removal in absentia after notice of the missed hearing pursuant to paragraph (2) alone.

Following the text of the in absentia removal provision would not "effectively eviscerate the protections provided by a valid notice to appear," as the majority suggests. *Supra*, at 13. Much of the information required by paragraph (1) is "included in standardized language on the I-862 notice-to-appear form." *Pereira*, 138 S. Ct. at 2113 (internal quotation marks omitted). So, for example, we have no reason to think DHS

would provide a paragraph (1) notice that omits the right to counsel, which is part of the standard recitals. And if any of the required advisements actually were omitted from an alien's paragraph (1) notice, the immigration judge could take appropriate measures to remedy the deficiency at the removal hearing. The absence of some information from the notice to appear isn't reason to skip one's removal hearing after receiving valid paragraph (2) notice about when and where it will occur.

Finally, without any support in the statutory text, the majority asserts that when an alien's paragraph (1) notice lacks a hearing date, we can ignore Section 1229a(b)(5)(B)'s plain statement that "[n]o written notice shall be required under subparagraph (A) if the alien has failed to provide" her change of address. Under the majority's scheme, an alien's obligation to update her address applies only *after* she receives a complete paragraph (1) notice that includes a hearing date, *see supra*, at 16, or—maybe—if the Government is attempting to send her a "proper" paragraph (1) notice, *supra*, at 16–17, but—apparently—not if the Government is attempting to send her a "deficient" notice, *supra*, at 16. Congress did not write these exceptions into the statute, and it is not our role to craft exceptions of our own.

Indeed, it is the majority's approach that eviscerates the careful procedures Congress enacted. In the majority's view, an alien who did not receive a complete paragraph (1) notice can ignore any paragraph (2) notice the Government sends—even if she receives it, reads it, and knows she is supposed to attend her hearing. What's more, an alien who has already been removed in absentia can move to reopen and rescind her removal order "at any time" based on a lack of notice, no matter how much time has passed.

8 U.S.C. § 1229a(b)(5)(C)(ii).  For a number of years, "almost 100 percent" of paragraph (1) notices omitted the time, date, or place of the initial hearing.  *See Pereira*, 138 S. Ct. at 2111 (internal quotation marks omitted); *see also Rodriguez v. Garland*, 31 F.4th 935, 938 & n.1 (5th Cir. 2022) (Elrod, J., dissenting from denial of rehearing en banc).  After the majority's decision, every alien who was removed in absentia after a valid paragraph (2) notice but an incomplete paragraph (1) notice can obtain rescission of her removal order, regardless of whether she provided an address at which she could be reached and regardless of whether she actually received the notice but chose to skip her removal hearing.  That is not the statute Congress wrote.

I respectfully dissent.